1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RUBY BRADLEY,                              No.  2:13-cv-2420 TLN DAD PS

12                  Plaintiff,

13          v.

14   COUNTY OF SACRAMENTO                       ORDER
     DEPARTMENT OF HUMAN
15   ASSISTANCE OF NORTHERN
     CALIFORNIA WELFARE DIVISION, et
16   al.,

17                  Defendants.

18

19          This matter came before the court on January 24, 2014, for hearing of defendants' motion

20   to dismiss plaintiff Ruby Bradley's complaint pursuant to Rule 12(b)(6) of the Federal Rules of

21   Civil Procedure.  Attorney David Norton appeared on behalf of Defendant County of Sacramento

22   Department of Human Assistance of Northern California Welfare Division ("County") and

23   Defendant Donna Doyle ("Doyle").  Plaintiff Ruby Bradley appeared on her own behalf.  After

24   hearing oral argument, defendants' motion was taken under submission.

25          For the reasons stated below, defendants' motion to dismiss will be granted and plaintiff

26   will be granted leave to file an amended complaint.

27   /////

28   /////

                                                  1

BACKGROUND

Plaintiff commenced this action on November 21, 2013, by paying the required filing fee and filing a complaint.[1]  (Dkt. No. 1.)  Plaintiff's complaint alleges, in relevant part, as follows.  In March of 1996, the County hired plaintiff as an on-call site coordinator.  (Compl. (Dkt. No. 1) at 3.[2])  "Plaintiff is an African American female over the age of forty."  (Id. at 2.)  In April of 1999, the County hired plaintiff as a part-time Site Coordinator.  (Id. at 4.)  In January of 2000, the County hired plaintiff as a full-time Human Service Specialist.  (Id.)

> Approx in 2006 defendants' began promoting and hiring and moving around African American employees to higher positions and lateral transfers, as well as promoting younger candidates with less qualifications for positions plaintiff had applied for and was not selected to fill in which plaintiff had the education and qualifications to perform.

(Id.)  Moreover, over an unspecified period of time, the defendants "routinely overlook[ed] black females for promotions to certain positions" and targeted plaintiff by limiting and depriving her of promotional opportunities.  (Id. 4-5.)

Specifically, defendant Doyle, the County's Program Manager,

> practiced pitting minority employees against each other, and racially orchestrating unlawful employment practices at the bureau level and providing derogatory information to other County employee's regarding plaintiff which was designed to and intended to secretly block plaintiff's attempts to lateral transfer into other positions and effect plaintiff's employment status to remain limited and deprived of equal employment opportunities and promotional opportunities.

(Id. at 5-6.)  Defendant Doyle also "recommended and selected supervisors to assist her with oppressing plaintiff's working environment and relationship with other employees."  (Id. at 6.)  Moreover, supervisors at plaintiff's work location coached candidates "for promotional opportunities and lateral transfers to other positions" and the defendants promoted younger

---

[1]  Plaintiff is proceeding pro se in this action.  Therefore, the matter was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

employees "to Social Worker positions and allowed lateral transfers into other positions." (Id.) Although plaintiff had more seniority than some of the younger employees, "[p]laintiff was confined to one stationary work location surrounded by supervisor's to perform plaintiff's duties." (Id.) When plaintiff attempted to transfer to another location, one of defendants' supervisors told plaintiff she could not do so without permission from plaintiff's Program Manager. (Id.)

Defendants denied plaintiff "employment opportunities and other promotional opportunities because of her race." (Id. at 7.) Defendants designed and used methods of testing and policies "to discriminate against plaintiff because of her age, educational background and qualifications." (Id. at 8.) Defendants placed plaintiff's test scores "in very low ranks designed to cause plaintiff to never be chosen for promotional opportunities." (Id. at 9.)

At unspecified times defendants' employees and supervisors also allegedly harassed plaintiff "in conscious disregard of the hardship and embarrassment" it might cause her. (Id. at 11.) Specifically, other County employees harassed plaintiff with sarcastic remarks about her age, character and "for making internal and external complaints regarding defendants' policies and treatment of plaintiff in her employment." (Id. at 10.)

Defendants allegedly designed their actions to "force plaintiff to an act of violence or perform her duties inadequately to be disciplined." (Id.) Defendants then falsely accused plaintiff of violating their policies and disciplined her for doing so. (Id.) Further, "[p]laintiff was targeted in situations where an employee did not perform their duty; plaintiff was presented with the duty to perform." (Id. at 10-11.)

On September 28, 2009, plaintiff informed her supervisor that she "was feeling depress[ed] and exhausted" and could "no longer function adequately to perform her duties." (Id. at 6.) Plaintiff's supervisor provided her with workmen's compensation services. (Id.) In January of 2010, plaintiff began receiving psychiatric care.[3] (Id. at 7.)

---

[3] In her complaint plaintiff also alleges that "internal work assignment and hostile work environment" forced her to seek psychiatric treatment in September of 2009. (Compl. (Dkt. No. 1) at 4.)

1  Based on these allegations, plaintiff's complaint asserts causes of action for age-based

2  employment discrimination, race-based employment discrimination, and hostile work

3  environment/harassment.[4]  On December 12, 3013, defendants filed the motion to dismiss now

4  pending before the court.  (Dkt. No. 6.)  On January, 3, 2014, plaintiff filed an opposition to

5  defendants' motion.  (Dkt. No. 7.)  On January 16, 2014, defendants filed a reply to plaintiff's

6  opposition.  (Dkt. No. 8.)

7  MOTION TO DISMISS STANDARDS

8  The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

9  sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

10  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

11  sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

12  F.2d 696, 699 (9th Cir. 1990).  To state a claim on which relief may be granted, the plaintiff must

13  allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

14  Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

15  factual content that allows the court to draw the reasonable inference that the defendant is liable

16  for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

17  In determining whether a complaint states a claim on which relief may be granted, the

18  court accepts as true the material allegations in the complaint and construes the allegations in the

19  light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp.

20  Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d

21  1242, 1245 (9th Cir. 1989).  Pro se complaints are held to less stringent standards than formal

22
23
24
25
26
27
28

[4]  Plaintiff's complaint specifically alleges three causes of action:  (1) "Race and Age Discrimination- Title VII," (2) "Age Discrimination-Promotions," and (3) "Age Discrimination-Hostile Work Environment-Title VII."  Defendants argue that "there is no legal basis for a claim of age-based harassment under Title VII."  (Dkt. No. 6-1 at 6.)  Indeed, Title VII only applies to the protected classifications listed in the statute, i.e. race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1).  Age is not a protected category under Title VII.  However, under the complaint's second cause of action, plaintiff alleges that the defendants' discriminatory actions also violated the ADEA.  Accordingly the court will determine if the compliant has stated a viable ADEA claim.  See Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief. ").

4

1  pleadings drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). However, the

2  court need not assume the truth of legal conclusions cast in the form of factual allegations,

3  unreasonable inferences, or unwarranted deductions of fact. <u>Sanders v. Brown</u>, 504 F.3d 903,

4  910 (9th Cir. 2007) (noting that the court is "not obligated to accept every conclusory allegation

5  as true"). While Rule 8(a) does not require detailed factual allegations, "it demands more than an

6  unadorned, the defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678

7  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

8  statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove

9  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

10  been alleged." <u>Associated Gen. Contractors of Cal, Inc. v. Cal. State Council of Carpenters</u>, 459

11  U.S. 519, 526 (1983).

12     In ruling on a motion, the court is permitted to consider material that was properly

13  submitted as part of the complaint, documents that are not physically attached to the complaint if

14  their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and

15  matters of public record. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).

16     The minimum requirements for a civil complaint in federal court are as follows:

17     A pleading which sets forth a claim for relief … shall contain (1) a
18     short and plain statement of the grounds upon which the court's
       jurisdiction depends …, (2) a short and plain statement of the claim
       showing that the pleader is entitled to relief, and (3) a demand for
19     judgment for the relief the pleader seeks.

20  FED. R. CIV. P. 8(a).

21                              ANALYSIS

22  I.     <u>Defendant Doyle</u>

23     Plaintiff's complaint attempts to assert three causes of action for alleged violations of Title

24  VII and the Age Discrimination in Employment Act against defendants Sacramento County and

25  Donna Doyle. However, defendant Doyle cannot be held personally liable under either Title VII

26  or the Age Discrimination in Employment Act. <u>See</u> <u>Greenlaw v. Garrett</u>, 59 F.3d 994, 1001 (9th

27  Cir. 1995) ("Under Title VII there is no personal liability for employees, including supervisors

28  such as McMillin."); <u>Miller v. Maxwell's Intern. Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993)

5

1   (individual defendants cannot be liable for damages under Title VII or the ADEA); see also

2   Fantini v. Salem State College, 557 F.3d 22, 30 (1st Cir. 2009) ("As held by our sister circuits we

3   find that the statutory scheme of Title VII itself indicates that Congress did not intend to impose

4   individual liability on employees."); Smith v. Amedisys Inc.,  298 F.3d 434, 448 (5th Cir. 2002)

5   ("This circuit has held that there is no individual liability for employees under Title VII.");

6   Steshenko v. Albee, Case No.: 13-CV-4948-LHK, 2014 WL 2111676, at *7 (N.D. Cal. May 20,

7   2014) ("Here, Defendant Albee is not an employer; she is an individual employee of San

8   Francisco State University.  Thus, Albee cannot be held liable under the ADEA."); Edwards v.

9   Department of State Hosp. (DSH)-Coalinga, No. 1:13-cv-0105 AWI MJS, 2013 WL 6491520, at

10  *3 (E.D. Cal. Dec. 10, 2013) ("While the issue of individual liability under Title VII is not

11  without disagreement, it appears settled that in the Ninth Circuit that Title VII will not support

12  individual liability for claims of discrimination or retaliation.")

13  II.     Defendant County

14          With respect to the defendant County of Sacramento, the court finds that plaintiff's

15  complaint fails to contain a short and plaint statement of a claim showing that she is entitled to

16  relief.  In this regard, although plaintiff's complaint refers generally to a time frame spanning

17  thirteen years and to numerous alleged actions of the defendants and their employees, the

18  complaint rarely refers to any specific date on which an alleged unlawful action allegedly

19  occurred or the identity of the individual responsible for that alleged action.  A plaintiff must

20  allege overt acts which the defendants engaged in that support the plaintiff's claims with at least

21  some degree of particularity.  Jones v. Cmty. Redevelopment Agency of City of Los Angeles, 733

22  F.2d 646, 649 (9th Cir. 1984).

23          Moreover, although plaintiff's complaint generally refers to several causes of action, the

24  complaint fails to allege facts satisfying the elements of those causes of action.  Although the

25  Federal Rules of Civil Procedure adopt a flexible pleading policy, a complaint must give the

26  defendant fair notice of the plaintiff's claims and must allege facts that state the elements of each

27  claim plainly and succinctly.  FED. R. CIV. P. 8(a)(2); Swierkiewicz v. Sorema N. A., 534 U.S.

28  506, 507 (2002) (noting that Rule 8(a)(2) requires a complaint to give defendant fair notice of

6

1  what plaintiff's claim is and the grounds upon which it rests);  Williams v. Boeing Co., 517 F.3d

2  1120, 1130 (9th Cir. 2008) (noting that plaintiff's complaint must give defendant fair notice of

3  plaintiff's claim against him/her and grounds upon which it rests "[e]ven though heightened

4  pleading is not required in discrimination cases").  "A pleading that offers 'labels and

5  conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'"  Iqbal, 556

6  U.S. at 678 (quoting Twombly, 550 U.S. at 555).  Further, a complaint is insufficient "if it tenders

7  'naked assertions' devoid of 'further factual enhancements.'"  Id. (quoting Twombly, 550 U.S. at

8  557).

9        Plaintiff in her complaint attempts to assert a claim for violation of the Age

10  Discrimination in Employment Act.  The Age Discrimination in Employment Act ("ADEA")

11  makes it unlawful for an employer

12      (1) to fail or refuse to hire or to discharge any individual or otherwise
discriminate against any individual with respect to his compensation, terms,

13  conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would

14  deprive or tend to deprive any individual of employment opportunities
or otherwise adversely affect his status as an employee, because of such

15  individual's age . . . .

16

17  29 U.S.C. § 623(a)(1)-(2).

18        "To establish a prima facie case of failure-to-promote under the ADEA, the plaintiff must

19  demonstrate 'that he or she was (1) at least forty years old, (2) qualified for the position for which

20  an application was submitted, (3) denied the position, and (4) the promotion was given to a

21  substantially younger person.'"[5]  Morgan v. Napolitano, 988 F.Supp.2d 1162, 1181 (E.D. Cal.

22  2013) (quoting Shelley v. Geren, 666 F.3d 599, 608 (9th Cir. 2012)).

23        Plaintiff's complaint, however, fails to allege sufficient facts to state the elements of an

24  ADEA claim.  Specifically, plaintiff's complaint fails to allege what position plaintiff applied for,

25  when she applied for it, her age at the time of the application, her qualifications, or the age of the

26  ────────────
[5]  At this stage of the proceeding, plaintiff need only allege sufficient facts to state the elements of

27  her claim.  See Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1122 (9th Cir. 2008)
("At the motion to dismiss stage, [the plaintiff] need not support his allegations with evidence, but

28  his complaint must allege sufficient facts to state the elements of [his/her] claim.").

1 younger employee who was selected for the position.[6]  See Heyer v. Governing Bd. Of Mt.

2 Diablo Unified Sch. Dist, 521 Fed. Appx. 599, 601 (9th Cir. 2013)[7] (plaintiff's "mere conclusory

3 statements that he was discriminated against in violation of the ADEA are not sufficient to meet

4 his pleading burden"); Jones, 733 F.2d at 649 (concluding that the district court properly

5 dismissed pro se plaintiff's claim because "[h]is allegations are conclusional and unsupported by

6 any facts as to how race entered into any decisions").

7        The compliant also attempts to assert a claim for a violation of Title VII.  Title VII makes

8 it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise

9 discriminate against any individual with respect to [her] compensation, term, conditions, or

10 privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).

11       It is well-established that Title VII prohibits intentional discrimination as well as

12 employment practices or policies that lead to disparities in the treatment of classes of workers.

13 Ricci v. DeStefano, 557 U.S. 557, 577 (2009) ("Title VII prohibits both intentional discrimination

14 (known as 'disparate treatment') as well as, in some cases, practices that are not intended to

15 discriminate but in fact have a disproportionately adverse effect on minorities (known as

16 'disparate impact').").  See also Griggs v. Duke Power Co., 401 U.S. 424, 430-31 (1971)

17 (interpreting Title VII to prohibit employers' facially neutral practices that are discriminatory in

18 operation); Garcia v. Spun Steak Co., 998 F.2d 1480, 1484 (9th Cir. 1993).  Thus, "a plaintiff

19 alleging discrimination under Title VII may proceed under two theories:  disparate treatment or

20 disparate impact."  Garcia, 998 F.2d at 1484.

21 /////

22 /////

23 _____

24 [6]  Plaintiff's EEOC charge, which is attached to the complaint, does contain some of these
important factual allegations.  See (Compl. (Dkt. No. 1) at 20-22) (alleging that plaintiff's date of
25 birth is January 8, 1960, that age discrimination took place between May 10, 2010 and September
26, 2010, and that "In May 2010, [plaintiff] applied for a lateral transfer as a CWEX coordinator
26 . . . [plaintiff] was denied the [p]osition").  If plaintiff elects to file an amended complaint, these
are the types of specific factual allegation that plaintiff should include in an amended complaint.

27

28 [7]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
36-3(b).

1    A plaintiff can establish a prima facie case of disparate impact under Title VII by (1)

2    showing a significant disparate impact on a protected class, (2) identifying the specific

3    employment practices or selection criteria at issue, and (3) showing a causal relationship between

4    the challenged practices or criteria and the disparate impact.  Hemmings v. Tidyman's Inc., 285

5    F.3d 1174, 1190 (9th Cir. 2002) (citations omitted).  Typically, plaintiffs establish these elements

6    with statistical evidence demonstrating the selection bias of an employment practice.  Lawrence

7    v. Dep't of Interior, 525 U.S. 916, 921 (9th Cir. 2008); Stout v. Potter, 276 F.3d 1118, 1122 (9th

8    Cir. 2002).  Intent is irrelevant to a disparate impact claim.  Watson v. Fort Worth Bank & Trust,

9    487 U.S. 977, 988 (1988); Garcia, 998 F.2d at 1484.  "[I]mpact analysis is designed to implement

10   Congressional concerns with 'the consequences of employment practices, not simply the

11   motivation.'"  Garcia, 998 F.2d at 1484 (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417,

12   1424 (9th Cir. 1990) (citations omitted)).

13   Here, plaintiff's complaint fails to allege any facts that would suggest a cognizable

14   disparate impact claim.  In this regard, the complaint contains a single, vague allegation that the

15   "defendants' routinely overlook[ed] black females for promotions to certain positions."[8]  (Compl.

16   (Dkt. No. 1) at 4.)  Moreover, the complaint fails to allege any facts that identify a specific,

17   facially neutral employment practice or any facts that suggest such a practice caused the alleged

18   adverse impact on African American employees.  See Hines v. California Pub. Utilities Comm'n,

19   467 Fed. Appx. 639, 641 (9th Cir. 2012)[9] (holding that "[t]he district court properly dismissed the

20   disparate impact claim because [the plaintiff] failed to allege facts identifying a specific, facially

21   neutral employment practice, or sufficient to show a causal relationship between such a practice

22   and its adverse impact on African-American employees").

23   An employer discriminates through disparate treatment when it singles out a person and

24   treats that person less favorably than other similarly situated people because of a protected trait.

25

26   [8]  In contradiction to this allegation, however, plaintiff also alleges in her complaint that the
     "defendants' began promoting and hiring and moving around African American employees in
27   higher positions and lateral transfers."  (Compl. (Dkt. No. 1) at 4.)

28   [9]  See fn. 7, above.

1  Watson, 487 U.S. at 985-86; McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004).

2  To establish a prima facie case of disparate treatment, a plaintiff must allege facts demonstrating

3  that:  (1) she is a member of a protected class; (2) she was qualified for the position she sought or

4  held; (3) she was subject to an adverse employment action; and (4) similarly situated individuals

5  outside his protected class were treated differently.  Davis v. Team Elec. Co., 520 F.3d 1080,

6  1089 (9th Cir. 2008).  An "adverse employee action" for purposes of Title VII is any action that

7  negatively impacts an employee's "compensation, terms, conditions or privileges of

8  employment."  42 U.S.C. § 2000e-2(a)(1); Chuang v. University of California, Davis, Board of

9  Trustees, 225 F.3d 1115, 1125 (9th Cir. 2000).  See also McAlindin v. County of San Diego, 192

10  F.3d 1226, 1239 (9th Cir. 1999) ("[I]f a transfer to a 'position was not made available to

11  [plaintiff] because of her involvement in protected activities,' then she suffered an adverse

12  employment decision.") (quoting Bouman v. Block, 940 F.2d 1211, 1229 (9th Cir. 1991)).

13      Here, aside from the allegations that she was a member of a protected class, plaintiff's

14  complaint fails to allege any of the elements of a disparate treatment claim with any specificity.

15  Although it appears that the alleged adverse employment action at issue here may have been

16  defendants' failure to promote plaintiff, as noted above, plaintiff has failed to allege the facts

17  surrounding that failure to promote with sufficient specificity.

18      Finally, in her complaint plaintiff also attempts to assert a claim for a hostile work

19  environment.  Title VII prohibits an employer from "requiring people to work in a

20  discriminatorily hostile or abusive environment."[10]  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

21  (1993).  To state a viable hostile work environment claim under Title VII, a plaintiff must allege

22  facts demonstrating "(1) that [s]he was subjected to verbal or physical conduct of a harassing

23  nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or

24  pervasive to alter the conditions of the victim's employment and create an abusive working

25  ─────────────────

26  [10]  The identical conduct is forbidden by the ADEA when the discrimination occurred because of
    the individual's age.  See Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1109

27  (9th Cir. 1991) (abrogated on other grounds by statute as stated in Dominguez-Curry, 424 F.3d at
    1041); Morgan v. Napolitano, 988 F.Supp.2d 1162, 1174 (E.D. Cal. 2013) ("The Ninth Circuit

28  has previously recognized the existence of ADEA hostile work environment claims.").

1   environment." Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1109-10 (9th Cir. 2000) (quoting

2   Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999)).  While Title VII "affords

3   employees the right to work in an environment free from discriminatory intimidation, ridicule,

4   and insult," it is not "a general civility code." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65

5   (1986).  See also Onscale v. Sundowner Offshore Serv.s, Inc., 523 U.S. 75, 80 (1998); Fargher v.

6   City of Boca Raton, 524 U.S. 775, 788 (1998).  Indeed, the alleged conduct must be so extreme

7   that it effectively changes the terms and conditions of employment.  Fargher, 524 U.S. at 65.

8          Further the plaintiff's allegations must show that not only the plaintiff felt that the

9   environment was hostile, but also that the environment was objectively hostile.  Harris, 510 U.S.

10   at 20; Dawson v. Entek Intern., 630 F.3d 928, 938 (9th Cir. 2011).  Alleged conduct is beyond

11   Title VII's purview when a reasonable person would not find the conduct to be hostile or abusive.

12   Onscale, 523 U.S. at 81; Dawson, 630 F.3d at 938.  A reasonable person rarely finds an isolated

13   incident of harassment to be such a serious act of discrimination.  Johnson v. Riverside

14   Healthcare, 534 F.3d 1116, 1123 (9th Cir. 2008); Brooks v. City of San Mateo, 229 F.3d 917, 924

15   (9th Cir. 1999).  However, "the more outrageous the conduct, the less frequent must it occur to

16   make a workplace hostile."  Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998) (citing

17   Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991)).

18           Here, the complaint contains only vague and conclusory allegations such as that plaintiff

19   "was subjected to a hostile work environment because of defendants' employees' and defendants'

20   program manager and supervisor's outrageous conduct," (Compl. (Dkt. No. 1) at 10), and that

21   "[a]s a direct and proximate result of acts of defendants', plaintiff sustained mental anguish,

22   humiliation, damage to plaintiff's career aspirations and educational goals, and loss of good

23   health and sleep" and that she was "subjected to intolerable working conditions . . . in violation of

24   the Civil Rights Act of 1964, as amended in 1991, Title VII."  (Id. at 11.)

25          Even if taken as true, these allegations are too vague and conclusory to give the

26   defendants fair notice of the nature of plaintiff's claim.  See Riverside Healthcare, 534 F.3d at

27   1122 (dismissing plaintiff's claim because plaintiff did not "allege sufficient facts to state the

28   elements of a hostile work environment claim" and thus failed to give the defendant fair notice).

III.     Failure to Exhaust

A plaintiff who seeks to bring a Title VII claim must exhaust the administrative remedies by filing a charge with the EEOC within 180 days after the alleged unlawful employment action or practice occurred.  42 U.S.C. § 2000e-5(e)(1).  See also Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1104 (9th Cir. 2008).  "The failure to observe Title VII's exhaustion requirements renders a suit subject to dismissal."  Kirby v. Brown, No. 2:13-CV-00021 LKK JFM (PS), 2013 WL 4780767, at *7 (E.D. Cal. Sept. 5, 2013).  Accord Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).

A federal court may not consider allegations of discrimination that the plaintiff failed to include in her administrative charge "unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."  B.K.B v. Maui Police Dep't., 276 F.3d 1091, 1100 (9th Cir. 2002).  Accord E.E.O.C. v Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994).  To determine whether the plaintiff satisfied the exhaustion requirement, the court should construe the language of the EEOC charge "with the utmost liberality."  Kaplan v. Int'l Alliance of Theatrical & Stage Emp.s, 525 F.2d 1354, 1359 (9th Cir. 1975).  Accord Freeman v. Oakland Unified School Dist., 291 F.3d 632, 636 (9th Cir. 2002); Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1476 (9th Cir. 1989).  Moreover, the court may consider factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge and any locations at which discrimination is alleged to have occurred."  B.K.B., 276 F.3d at 1100.  See also Freeman, 291 F.3d at 636.

Here, defendants argue that plaintiff may not bring her claims for race-based discrimination and hostile work environment under Title VII because she failed to comply with the exhaustion requirement.  (Dkt. No. 6-1 at 6.)  In her Charge of Discrimination filed on January 8, 2011 with the California Department of Fair Employment & Housing, when asked about the basis of the alleged discrimination, plaintiff checked only the box next to age.  (Compl. (Dkt. No. 1) at 20.)  Plaintiff also checked only the "age" and "retaliation" boxes on her June 16,

/////

/////

2012 amended Charge of Discrimination.[11]  (Id. at 21.)  Moreover, plaintiff did not make any

race-based allegations in her September 27, 2010 EEOC Intake Questionnaire, in her January 8,

2011 Charge of Discrimination or in her June 26, 2012 amended Charge of Discrimination.  (Id.

at 17-22.)  Instead, plaintiff repeatedly and exclusively referred to allegations of age related

discrimination.

Thus, even construed with the utmost liberality, it appears that nothing in plaintiff's

EEOC charge would have indicated to investigators that they should have investigated any other

type of discrimination other than the age discrimination plaintiff explicitly alleged.  Thus, it

appears that plaintiff failed to exhaust her claims of race-based discrimination and hostile work

environment.[12]  See Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003) (finding that allegations

of discrimination on the basis of disability are not reasonably related to those in an EEOC charge

alleging discrimination on the basis of race, color, religion, sex, national origin, and/or age

because an investigation about the former could not have been reasonably expected to grow out of

the latter); Lowe v. City of Monrovia, 775 F.2d 998, 1004 (9th Cir. 1985), amended 784 F.2d

1407 (9th Cir. 1986) (holding that the plaintiff failed to exhaust a sex discrimination claim where

plaintiff failed to allege sex discrimination along with the race discrimination claim contained in

her EEOC charge); Howard v. Kiewit Pac. Corp., No. CIV. 05-00525ACK/KSC, 2006 WL

278603, at *3-4 (D. Haw. Jan. 19, 2006) (finding that plaintiff had failed to exhaust race and

---

[11]  Although it does not appear from a reading of plaintiff's compliant that she intended to assert a
claim for retaliation, out of an abundance of caution, plaintiff is advised that in order to establish
a prima facie case for retaliation, a plaintiff must demonstrate "(1) she engaged in an activity
protected by Title VII; (2) her employer subjected her to an adverse employment action; and (3) a
causal link exists between the protected activity and the adverse action."  Ray v. Henderson, 217
F.3d 1234, 1240 (9th Cir. 2000).

[12]  However, "[t]he exhaustion requirement is akin to a statute of limitations and is subject to
waiver, equitable estoppel, and equitable tolling."  Leong v. Potter, 347 F.3d 1117, 1122-23 (9th
Cir. 2003).  See also Albano v. Schering-Plough Corp., 912 F.2d 384, 387 (9th Cir. 1990)
("Albano's detailed declaration, outlining his efforts to have his charge amended, was undisputed
by Plough.  Albano had no less than fourteen conversations with the EEOC.  On at least three
occasions, the EEOC assured Albano that his charge encompassed his claim for constructive
discharge and refused his efforts to amend.  Under these facts, we hold that equitable
considerations excuse Albano's failure to exhaust administrative remedies.").

1    color discrimination claims where plaintiff had checked only the "age" and "disability" boxes on

2    the EEOC charge and failed to make any race or color based allegations therein).

3                                          LEAVE TO AMEND

4           For the reasons stated above, defendants' motion to dismiss will be granted and plaintiff's

5    complaint will be dismissed for failure to state a claim upon which relief may be granted.  The

6    undersigned has carefully considered whether plaintiff could file an amended complaint that

7    states a cognizable claim that would not be subject to dismissal.  "Valid reasons for denying leave

8    to amend include undue delay, bad faith, prejudice, and futility."  California Architectural Bldg.

9    Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); accord Klamath-Lake Pharm.

10   Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while

11   leave to amend shall be freely given, the court does not have to allow futile amendments).

12   However, when evaluating the failure to state a claim, the complaint of a pro se plaintiff may be

13   dismissed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in

14   support of his claim which would entitle him to relief.'"  Franklin v. Murphy, 745 F.2d 1221,

15   1228 (9th Cir. 1984) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972)).  See also Weilburg v.

16   Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to

17   amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be

18   cured by amendment.") (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir.

19   1988)).

20          Here, the court cannot say at this time that it appears beyond doubt that plaintiff cannot

21   allege and prove any set of facts in support of her claims which would entitle her to relief.

22   Accordingly, plaintiff will be granted an opportunity to amend her complaint.

23          Nonetheless, plaintiff is again cautioned that although the Federal Rules of Civil

24   Procedure adopt a flexible pleading policy, a complaint must give the defendant fair notice of the

25   plaintiff's claims and must allege facts that state the elements of each claim plainly and

26   succinctly.  FED. R. CIV. P. 8(a)(2); Jones, 733 F.2d at 649.  Further, "the tenet that a court must

27   accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

28   Threadbare recitals of the elements of a cause of action, supported by mere conclusory

                                                  14

1  statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  A plaintiff may construct a complaint's

2  framework with legal conclusions, but must support the legal conclusions with factual allegations

3  with at least some degree of particularity.  <u>Id.</u> at 679; <u>Jones</u>, 733 F.2d at 649.

4        Plaintiff is also reminded that the court cannot refer to a prior pleading in order to make an

5  amended complaint complete.  Local Rule 220 requires any amended complaint to be complete in

6  itself without reference to prior pleadings.  The amended complaint will supersede the original

7  complaint.  See <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, in any amended complaint

8  plaintiff elects to file, she must (1) name each defendant in the caption, (2) identify each

9  defendant in the body of the complaint and of each claim, and (3) sufficiently allege the

10  involvement of each defendant, just as if it were the initial complaint filed in this case.  Finally,

11  any amended complaint filed by plaintiff must include concise but complete factual allegations

12  describing the conduct and events which underlie her claims.

13                          CONCLUSION

14        Accordingly, IT IS HEREBY ORDERED that:

15     1.  Defendants' December 12, 2013 motion to dismiss (Dkt. No. 6) is granted.

16     2.  Plaintiff's November 21, 2013 complaint (Dkt. No. 1) is dismissed with leave to

17        amend.

18     3.  Within twenty-eight days from the date of this order, an amended complaint shall be

19        filed that cures the defects noted in this order and complies with the Federal Rules of

20        Civil Procedure and the Local Rules of Practice.  The amended complaint must bear

21        the case number assigned to this action and must be titled "Amended Complaint."

22     4.  If any defendant named in the original complaint is named as a defendant in the

23        amended complaint filed by plaintiff, that defendant shall respond to the pleading

24        within twenty-one days after it is filed and served.

25  /////

26  /////

27  /////

28  /////

1      5.  Failure to comply with this order in a timely manner may result in a recommendation

2          that this action be dismissed.

3  Dated:  August 13, 2014

4

5                                                      DALE A. DROZD
                                                       UNITED STATES MAGISTRATE JUDGE
6

7  DAD:MP
   Ddad1\orders.pro se\Bradley2420.2.docx
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28